ROBERT V. RICHTER (SBN 128196)
LAW OFFICE OF ROBERT V. RICHTER
155 Quail Gardens Dr.
Encinitas, CA  92024
Telephone: (661) 312-6077
Facsimile: (760) 436-8612

Attorneys for Plaintiff, ANDY SUNTER

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY SUNTER,<br><br>              Plaintiff,<br><br>       v.<br><br>YMCA OF SAN DIEGO COUNTY ("YMCA"), RANCHO FAMILY YMCA, MARK THOMPSON,<br><br>              Defendants. | CASE NO.   **'15 CV 2682 W     BGS**<br><br>**PLAINTIFF ANDY SUNTER'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>(1) VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT "CFRA"[CAL. GOVT. CODE §12945.2 et. seq.]-INTERFERENCE;<br>(2) VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT "CFRA"[CAL. GOVT. CODE §12945.2 et. seq.]-RETALIATION;<br>(3) CONSTRUCTIVE WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;<br>(4) VIOLATION OF FAMILY MEDICAL LEAVE ACT "FMLA"[ 29 U.S.C. § 2601 et seq.]-INTERFERENCE;<br>(5) VIOLATION OF FAMILY MEDICAL LEAVE ACT "FMLA"[ 29 U.S.C. § 2601 et seq.]-RETALIATION;<br>(6)INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;<br>(7) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;<br><br>**DEMAND FOR TRIAL BY JURY** |

**CIVIL ACTION COMPLAINT**

Plaintiff Andy Sunter ("Plaintiff or Mr. Sunter"), by and through undersigned counsel, hereby complains as follows against Defendants YMCA of San Diego County ("YMCA"), and Mark Thompson ("THOMPSON")(collectively "Defendants").

**JURISDICTION AND VENUE**

1.     This action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), This court has subject matter jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

2.     The claims asserted in this action arose within this district and the alleged wrongful acts and damage occurred in this district. Venue of this action is proper pursuant to 29 U.S.C. §2617 and 28 U.S.C. § 1391.

**THE PARTIES**

1.     At all times mentioned herein, Plaintiff was an adult individual, a citizen of the state of California, and resident of San Diego County. At the time of the incidents relevant hereto, Plaintiff was employed by Defendant YMCA at the Rancho Family YMCA branch, located at 9410 Fairgrove Ln., San Diego, CA 92129.

2.     Defendant YMCA is a corporation authorized to, and at all times mentioned herein, did transact business in the State of California, employing more than 50 persons. Defendant YMCA's principal place of business is located at 3708 Ruffin Road, San Diego, CA 92123. Defendant YMCA maintains several branches in San Diego County, including the Rancho Family YMCA branch, which are wholly owned by Defendant YMCA.

3.     Defendant THOMPSON, at all times during the events alleged herein, was employed by Defendant YMCA as the Executive Director of the Rancho Family YMCA branch; and THOMPSON was a resident of the State of California.  Defendant THOMPSON is

responsible, in part, for the commission of wrongful acts against Plaintiff.

4. The true names of Does 1-10 (hereinafter collectively referred to as "Defendants"), whether individual, corporate, associate, or otherwise, and the manner in which they are responsible for damages herein are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff prays leave to amend this complaint to show their true names and capacities and the manner in which they are responsible when the same have been ascertained. Plaintiff is informed and believes and based thereon, alleges that each Defendant is negligently liable, strictly liable, liable in warranty, or otherwise responsible in some manner as more particularly alleged herein for the events and occurrences alleged, and thereby caused injuries and damages to Plaintiff. All things herein alleged to have been done by any specifically named defendant have also been done by all other defendants including, without limitation, defendants designated by fictitious names.

5. At all times herein mentioned, each of the said Defendants was in a joint venture with, or agent, servant or employee of, the other Defendants, or was otherwise related to or acting for or on behalf of the other Defendants. Each is bound by or responsible for the acts of the others. Said relationships between Defendants were and are created by agreement, by ratification, by ostensible authority, or otherwise, and this paragraph is not a limitation on the manner in which said relationships were created as a matter of fact or as a matter of law. At all times herein mentioned, each Defendant was acting and acted within the course and scope of the joint venture, agency, service, employment, and authority (actual, inherent, implied, ostensible, or otherwise). Each Defendant further was acting with the knowledge and consent, or ratification of the principal and employer under such circumstances and conditions as to give rise to the principal's and employer's responsibility for such acts.

6. Defendant YMCA was engaged in commerce or in an industry or activity affecting commerce in California, and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto.

7. On November 28, 2012, Mr. Sunter was offered a position of full-time employment

PLAINTIFF'S COMPLAINT

as a Program Director I-Camp/Adventure Guides, with the YMCA of San Diego County, at the Rancho Family branch, located at 9410 Fairgrove Lane, San Diego, California 92129. His employment commenced on January 7, 2013.

8.     On or before August 2, 2013, Mr. Sunter learned that his mother was terminally ill, and was called home to England because she was not expected to live. He first notified Defendant YMCA of his need to take time off to care for her on or about August 2, 2013.  At that time, he was notified that he was not yet eligible to take leave under the FMLA; moreover, he had no sick or vacation time remaining.

9.     Defendant YMCA did, however, permit Mr. Sunter to take leave to see his mother at this time, under the YMCA's discretionary leave policy, which provided up to 10 days of such leave.

10.     On September 16, 2013, Mr. Sunter corresponded with Defendant YMCA's employee Jill Schaeffer, Manager of Benefits for the YMCA of San Diego, regarding his right to paternity leave for the upcoming birth of his baby. At that time, Ms. Schaeffer notified Mr. Sunter that he was not yet eligible for FMLA leave, but that he would be eligible upon his one year anniversary with the YMCA.  In response, Mr. Sunter told Ms. Schaeffer that his mother was ill, and that he wanted to see her, but that he would wait until January; he also requested confirmation that Defendant YMCA notify him about whether he had a leave benefit for this purpose. Ms. Schaeffer did not respond to Mr. Sunter's inquiry.

11.     On September 17, 2013, Defendant THOMPSON corresponded by email with Ms. Schaeffer, regarding Mr. Sunter's request for time off without pay, for four days in December, to care for his new baby.  Defendant THOMPSON stated that Mr. Sunter be required to plan ahead for any FMLA leave to be taken, once he was eligible for benefits.

12.     On September 24, 2013, Defendant THOMPSON sent an email to Mr. Sunter, denying his request for four days off without pay in December, to care for his newborn child. He also demanded that Mr. Sunter provide notice of any FMLA leave upon becoming eligible "well in advance" of such leave.

PLAINTIFF'S COMPLAINT

13. On January 7, 2014, Mr. Sunter received an email from Ms. Schaeffer indicating he was now eligible for FMLA leave.

14. On January 7, 2014, Mr. Sunter met with Annette King, Associate Executive Director of the Rancho Family YMCA. At that time, Mr. Sunter asked for the week of January 27-31 off to bond with his newborn child. Ms. King acknowledged that he was currently eligible for FMLA leave; she also asked him to send her an email regarding his request for time off.

15. On January 24, Mr. Sunter submitted the required FMLA paperwork in regard to a request for time off, to care for his newborn son, from 1/27/14-1/31/14.  Following this submission, Mr. Sunter received no written notice of his eligibility under the FMLA/CFRA, in response to this request. Further, the leave was orally denied on the basis that Mr. Sunter did not give enough advance notice; the YMCA did not provide written notice of the denial of Mr. Sunter's leave.

16. On January 28, 2014, Mr. Sunter sent an email to Ms. Schaeffer including a request for several weeks off, to care for his newborn son. The requested dates for time off included: February 10-14, 2014, February 24-March 4, 2014, and March 17-28, 2014.

17. On January 31, Ms. King sent an email to Mr. Sunter approving two weeks of the leave requested on January 28, 2014.  The leave approved was for February 10-14, and March 31-April 4, 2014 dates. Ms. King's email indicated that Mr. Sunter could use personal time and vacation time for this leave, but did not clarify his rights under the FMLA, particularly whether he would be able to take unpaid leave, even if he had no personal and vacation time left. Mr. Sunter was not provided with a written eligibility notice following Ms. King's approval; moreover, he was not provided with a written designation of benefits following this request.

18. In addition to not providing both a written eligibility of benefits and a written designation of benefits notices, Defendant YMCA did not provide Mr. Sunter with the California Paid Family Leave ("PFL") Program Brochure DE 2511, at the time he left work to bond with his child. The PFL brochure is required under California law, to be given to employee's to inform them of their right to six weeks of wage replacement benefits when they take leave to bond with a

PLAINTIFF'S COMPLAINT

child or care for a seriously ill parent. Mr. Sunter should have been provided with this brochure, not only at the time he was hired, but also each time he left work for an event covered by the PFL. As a result of this failure, Mr. Sunter took bonding time, without the benefit of sufficient information concerning his right to seek wage replacement benefits. Had he been given this pamphlet, he would also have been informed of his eligibility for paid leave to care for his seriously ill mother.

19.     Mr. Sunter ultimately took bonding leave from February 10-14, 2014, however, Defendant YMCA's conduct caused Mr. Sunter to form a reasonable belief that he was required to work during his requested time off.  Mr. Sunter did work from home during the week of February 10-14, 2014, answering emails and making phone calls. His supervisors were aware that he was working during this time; however, he was never informed that he was not required to do any work during his time off.

20.     On February 21, 2014, Mr. Sunter received a phone call from his brother in England, indicating that his mother was at the end stages of her disease and had only days to live. He also indicated that his mother could not eat or drink without assistance. A few hours after this phone call, Mr. Sunter met with Defendant THOMPSON, and told him that his mother's doctors expected her to expire within the next several days.  He indicated that he had to leave to go to England to care for her at her bedside, and apologized for requesting the leave at a busy time. Mr. Sunter expressed concern that he had no further sick or vacation time left, and asked Defendant THOMPSON if there was any other benefit available that would entitle him to take such leave. Defendant THOMPSON replied that Mr. Sunter would only be entitled to bereavement leave in the event his mother, in fact, died. Defendant Thompson did not inform Mr. Sunter that he was entitled to FMLA/CFRA leave, despite the lack of sick or vacation leave remaining, and was aware that Mr. Sunter did not have an accurate understanding of his statutory right to leave.

21.     Angrily, Defendant THOMPSON asked Mr. Sunter "Is this how you live your life?" Mr. Sunter felt guilty for having to leave during a busy time, but said that he had to go.  He asked Defendant THOMPSON to confirm, in his absence, whether there was any way he could

PLAINTIFF'S COMPLAINT

take leave without losing his job, as he had done the previous August. He also asked Defendant THOMPSON whether he should resign to avoid being fired, and offered to resign if the YMCA would not grant him leave. Defendant THOMPSON told Mr. Sunter to "do what he had to do", and to send an email indicating his plans.

22. Immediately following this conversation with Defendant THOMPSON, Mr. Sunter left his office and went home to prepare for his trip to England. Later that day, Defendant THOMOPSON emailed Mr. Sunter, requesting that Mr. Sunter send a "quick email for time off before leaving for England as we talked about today." Based upon this email, Mr. Sunter believed that Defendant THOMPSON would coordinate with other YMCA employees to determine whether he would be granted leave, as they had done the prior August. At this time, Defendant THOMPSON did not correct Mr. Sunter's misunderstanding of his rights to FMLA/CFRA leave, nor did he ask whether Mr. Sunter wanted to take FMLA/CFRA leave.

23. On Saturday February 22, 2014, Mr. Sunter purchased a one-way ticket to England.

24. On Sunday, February 23, 2014, Mr. Sunter emailed Defendant THOMPSON, as he was about to board the flight for England, indicating that he was submitting a "conditional resignation". The resignation was conditional in nature, because Mr. Sunter did not want to resign if the YMCA would allow him to take discretionary leave, as they had done previously; it was submitted in the event there was no alternative. Mr. Sunter sent the "conditional resignation" email, in reliance upon Defendant THOMPSON'S misrepresentations and/or concealment, concerning his rights to FMLA job-protected leave. Defendant THOMPSON was aware of his reliance.

25. Between February 21-22, 2014, emails were exchanged between Ms. King and Ms. Schaeffer. Both women understood that Mr. Sunter was leaving for England to care for his mother who was terminally ill, and that she was expected to die. In one email, Ms. King indicated that Mr. Sunter had two days of paid leave remaining, but did not have vacation or sick time left as of February 24, 2014; therefore, his leave at that point would be considered unpaid. Neither Ms, King, Ms. Schaeffer, nor any other employee of Defendant YMCA, corresponded with Mr. Sunter

PLAINTIFF'S COMPLAINT

to confirm his eligibility for FMLA/CFRA leave, to confirm whether he wanted to take protected leave, or to confirm that he actually was entitled to leave with pay for two of the days he was going to be absent.

26.     Following receipt of Mr. Sunter's February 23rd email, Defendant THOMPSON made no further attempt, by email or otherwise, to clarify whether Mr. Sunter wanted to take FMLA/CFRA leave.

27.     On February 24, 2014 (Monday), at approximately 9:27, Defendant THOMPSON emailed Mindy Fletcher, Employee Relations Specialist for Defendant YMCA, forwarding Mr. Sunter's February 23rd (Sunday) email, but indicating that he had "just heard back" from Mr. Sunter, when he had in fact received Mr. Sunter's email on Sunday. Defendant THOMPSON'S email did not clarify what Mr. Sunter meant by the "conditional" nature of his resignation.

28.     Ms. Fletcher responded to Defendant THOMPSON'S email, by acknowledging its receipt, but did not indicate agreement with Defendant THOMPSON'S suggestion. It is unknown whether the two further discussed Mr. Sunter's email by phone, or otherwise.

29.     Less than twenty minutes later, at 9:52 on February 24th, Defendant THOMPSON again emailed Ms. Fletcher, indicating that both he and Ms. King felt the Defendant YMCA should accept Mr. Sunter's resignation. It is uknown whether Ms. Fletcher responded by email or otherwise.

30.     At some point in the morning, prior to 10:54 a.m., Defendant THOMPSON left Mr. Sunter an abrupt and angry voicemail, accusing Mr. Sunter of failing to show up for work, and failing to notify the YMCA of his absence.  Defendant THOMPSON went on in the voicemail to threaten that if Mr. Sunter did not show up for work that day, he would be terminated.

31.     At 10:54 on February 24th, Mr. Sunter emailed Defendant THOMPSON, in response to the voicemail, forwarding the "conditional resignation" email from the evening prior, and indicating that he had already sent the same email the night before.  In addition, Mr. Sunter indicated he would be back to work on February 28th, and was "discussing a plan with the staff", to keep things moving in his absence.

PLAINTIFF'S COMPLAINT

32.    At 11:32 a.m. on February 24th, Mr. Sunter followed up with Annette King, notifying her that he was in England taking care of his mother, and working on a list of urgent tasks for the YMCA.   He indicated that he had offered his "resignation" to Defendant THOMPSON during their conversation the Friday before his departure. The terms of this resignation, however, were conditional, and were incorporated into his email that followed the meeting with Defendant THOMPSON. Ms. King had been apprised of the content of Mr. Sunter's February 23rd email prior to this time.   She made no further effort to clarify Mr. Sunter's intentions.

33.    During his absence, Mr. Sunter assisted in his mother's daily feeding and hydration, which had to be done with a syringe, because she was not able to feed herself and was unable to eat solid food.  He spent approximately 18 hours a day at the hospital by her bedside, from 6:00 am until midnight; and, some nights he slept at the hospital, in order to assist her. During his absence, Mr. Sunter felt compelled to work from the hospital, in the hope that he would have a job to which he could return. He spent approximately 2-3 hours per day performing work duties, which primarily involved answering company emails (including emails to and from Ms. King). Defendants were aware Mr. Sunter was spending time working on YMCA business, even though they had already determined he no longer had a job; they did not let him know that there was no duty to work during this time, and did not pay him during most, if not all, of his leave.

34.    During his absence, neither Defendant YMCA nor Defendant THOMPSON notified Mr. Sunter that he was entitled to benefits, or that the YMCA approved his leave; likewise, Defendants did not notify Mr. Sunter that the YMCA had definitively denied his request for leave, or that the YMCA had considered his resignation anything other than conditional.

35.    Anguished, Mr. Sunter purchased a one-way ticket back to the states and cut his trip short, prior to his mother's death.  His only purpose in coming home early was to try to secure his job, which he thought possible based upon Defendants' silence, and based upon the fact that they had granted him leave to see her previously. Had the YMCA communicated that Mr. Sunter could no longer return to his job, he would have stayed in England to be with his mother.

PLAINTIFF'S COMPLAINT

36.     Mr. Sunter returned to work on Monday March 2, 2014. At no time during that day did he have significant interaction with Mr. Thompson, Ms. Fletcher, Ms. King, or Ms. Schaeffer.

37.     Upon arrival the very next morning, however (March 3, 2014), Defendant Thompson and Ms. King came into Mr. Sunter's office, ambushing him, without any prior warning. The meeting lasted approximately 2-3 minutes. Defendant THOMPSON began the meeting by stating that the YMCA had accepted Mr. Sunter's resignation. In addition, Defendant THOMPSON represented, again, that the only leave Mr. Sunter had been entitled to was bereavement leave, under the YMCA's bereavement policy. Mr. Sunter acquiesced, believing that he had not been entitled to any further leave, and believing that the YMCA had in the end, refused to extend discretionary leave to him a second time. Mr. Sunter was not informed that he had been, or was still, eligible for FMLA/CFRA leave benefits.

38.     Voluntary resignation papers were prepared by the human resources department, and presented to Mr. Sunter to sign, a few hours following his meeting with Defendant THOMPSON and Ms. King.  Defendants' conduct caused Mr. Sunter to form a reasonable belief that he had to sign the form, in order to render his resignation effective, and Defendants were aware of this fact.

39.     Defendants never clarified, on March 3, 2014 or thereafter, that Mr. Sunter would not have been terminated for having taken leave the prior week, and/or that Mr. Sunter did not need to resign to avoid termination. In addition, at no time during or following this date, was Mr. Sunter advised that he had a past or present right to take leave to care for his mother under the FMLA/CFRA.

40.     Following Defendants communication that Mr. Sunter's conditional resignation had been "accepted", Defendants asked Mr. Sunter to work until the end of March.  He initially acquiesced, but indicated that he would have to leave again if he got word that his mother's condition worsened. Mr. Sunter received notice that his mother's condition worsened on or about March 6-7.  He returned to England after that date, and did not return to work at the YMCA thereafter.  His mother passed away on March 17, 2014.

41. Mr. Sunter exhausted all required administrative remedies, filing charges with the California Department of Fair Employment and Housing (DFEH). Plaintiff received a Right to Sue letter from the DFEH, a true and correct copy of which is attached to this complaint as Exhibit A, and incorporated by reference.

**FIRST CAUSE OF ACTION**

**(Violation of California Family Rights Act-Interference-Against Defendant YMCA)**

42. Plaintiff realleges, and incorporates as though fully set forth herein, paragraphs 1-29, above.

43. At all times material hereto, Plantiff was an employee covered by the California Family Rights Act (Govt. Code Sec. 12945.2, hereafter, "CFRA"), and was eligible for CFRA leave. Mr. Sunter's mother was suffering from a serious health condition, and he had worked over 1,250 hours for Defendant YMCA during the previous 12 months, during which he took under 12 weeks of family care or medical leave time off.

44. At all times material hereto, Defendant YMCA employed more than 50 employees within 75 miles of Plaintiff's place of employment.

45. The CFRA required Defendant YMCA to provide notice to its employees, including Plaintiff, of the right to CFRA leave and to grant Plaintiff leave to care for a parent with a serious health condition, with a guarantee of employment in the same or a comparable position upon the termination of the leave.

46. Plaintiff provided reasonable and sufficient notice as soon as practicable under the circumstances, to make Defendants aware that he needed to take leave, and the reasons for said leave, including the unanticipated timing of the leave, as alleged above. On February 21, 2014, Plaintiff commenced such leave to care for his parent with a serious health condition.

47. Defendants interfered with the lawful exercise of Plaintiff's statutory CFRA rights by, inter alia, failing to timely notify Plaintiff of his statutory rights, affirmatively misleading

11
PLAINTIFF'S COMPLAINT

Plaintiff about and/or concealing Plaintiff's CFRA rights, failing to determine whether Plaintiff's leave was protected CFRA leave, failing to permit and/or denying Plaintiff's request to exercise his lawful rights to CFRA leave, discouraging Plaintiff from taking CFRA leave, engaging in behavior that caused Plaintiff to form a reasonable belief that he would be fired for taking such leave, accepting Plaintiff's resignation, with knowledge that Plaintiff believed it was required to avoid termination for having taken leave denied by Defendant YMCA, constructively terminating Plaintiff in retaliation for taking such leave, and refusing to return Plaintiff to the same or comparable position, all in violation of the CFRA.

48.    Defendants' coercion, misrepresentations and/or concealment in regard to Plaintiff's rights under the CFRA, and in regard to his reasonable belief that he must resign to avoid termination, not only constitutes a violation of the CFRA, but also equitably estops Defendants from claiming that Plaintiff resigned voluntarily.

49.    As a direct, foreseeable, and proximate result of Defendants' acts, Plaintiff has suffered substantial losses and earning and job benefits, and has suffered humiliation, embarrassment, mental and emotional distress, anguish, and discomfort, all to Plaintiff's damage, the precise amount to be proven at trial.

50.    Defendant committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice, in a conscious disregard for Plaintiff's rights. Because the acts taken towards Plaintiff were carried out by Defendant YMCA's managerial employees acting in the despicable, deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

**SECOND CAUSE OF ACTION**

**(Violation of California Family Rights Act-Retaliation-Against Defendant YMCA)**

51.    Plaintiff realleges, and incorporates as though fully set forth herein, paragraphs 1-50, above.

52. At all times material, hereto, Plaintiff was an eligible employee covered by the California Family Rights Act (Govt. Code Sec. 12945.2, hereafter, "CFRA"). Plaintiff was entitled to CFRA leave to care for a parent suffering from a serious health condition, and had worked over 1,250 hours for Defendant YMCA during the previous 12 months, during which he took under 12 weeks of family care or medical leave time off.

53. Defendant YMCA employed more than 50 employees within 75 miles of Plaintiff's place of employment.

54. The CFRA required Defendant YMCA to provide notice to its employees, including Plaintiff, of the right to CFRA leave and to grant Plaintiff leave to care for a parent with a serious health condition, with a guarantee of employment in the same or a comparable position upon the termination of the leave.

55. Plaintiff provided reasonable and sufficient notice as soon as practicable under the circumstances to make Defendants aware that he needed to take leave and the reasons for said leave, including the unanticipated timing of the leave, as alleged above. On February 21, 2014, Plaintiff commenced such leave to care for his parent with a serious health condition.

56. Defendants retaliated against Plaintiff for the lawful exercise of Plaintiff's statutory CFRA rights by, inter alia, failing to timely notify Plaintiff of his statutory rights; by affirmatively misleading Plaintiff about, and/or concealing Plaintiff's CFRA rights; by failing to determine whether Plaintiff's leave was protected CFRA leave; by failing to permit and/or denying Plaintiff's request to exercise of his lawful right to CFRA leave; by discouraging Plaintiff from taking CFRA leave; by engaging in behavior that caused Plaintiff to form a reasonable belief that he would be fired for taking such leave; by accepting Plaintiff's resignation with knowledge that Plaintiff believed it was required to avoid termination for having taken leave denied by Defendant YMCA; by constructively terminating Plaintiff in retaliation for taking such leave; and, by refusing to return Plaintiff to the same or comparable position, all in violation of the CFRA.

57. Defendants' coercion, misrepresentations and/or concealment in regard to Plaintiff's rights under the CFRA, and in regard to his reasonable belief that he must resign to

avoid termination, not only constitute a violation of the CFRA, but also estop Defendants from claiming that Plaintiff resigned voluntarily.

58.     As a direct, foreseeable, and proximate result of Defendants' acts, Plaintiff has suffered substantial losses and earnings and job benefits, and has suffered humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage, the precise amount to be proven at trial.

59.     Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice, in a conscious disregard for Plaintiff's rights.  Because the acts taken towards Plaintiff were carried out by Defendant YMCA's managerial employees acting in the despicable, deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

**THIRD CAUSE OF ACTION**

**(Constructive Wrongful Termination—Against Defendant YMCA)**

60.     By this reference, Plaintiff hereby incorporates paragraphs 1-59, inclusive, of this document as if set forth fully herein.

61.     It is the public policy of the State of California that an employer shall not, in any instance, retaliate against employees for requesting and/or taking medical leave pursuant to the FMLA and/or CFRA. These public policies are fundamental, substantial, and are well grounded in state statutes, including, inter alia, Cal. Govt. Code §§12945.2 et seq, and in federal statutes, including 29 U.S.C. Sec. 2615.

62.     Defendant YMCA retaliated against Plaintiff for requesting and/or taking FMLA/CFRA leave by, inter alia, misrepresenting and/or concealing facts concerning Plaintiff's statutorily protected rights to take CFRA/FMLA leave, which intentionally and/or recklessly caused Plaintiff to form a reasonable belief that he would be terminated for taking such leave; and, with knowledge and/or reckless disregard of the fact that Plaintiff's resignation was coerced

and/or submitted in reliance upon Defendant's misrepresentation and/or concealment concerning his right to FMLA/CFRA statutorily protected leave, Defendants accepted Plaintiff's resignation in retaliation for such leave, and without notice of his rights, including his right to be restored to his same or comparable position.

63.    Defendant's misrepresentation and/or concealment intentionally and/or knowingly created an extraordinarily egregious work environment at the time of Plaintiff's resignation, in that Defendant improperly forced Plaintiff to choose in the first instance, between his job and the right to care for his mother at her deathbed (FMLA/CFRA leave); and, in the second instance, between termination and resignation, as a consequence of having taken such protected FMLA/CFRA leave. Defendant's acts constitute working conditions so intolerable that a reasonable person in Plaintiff's position would have no alternative but to resign.

64.    Defendant's coercion, misrepresentations and/or concealment in regard to Plaintiff's rights under the CFRA/FMLA, and in regard to his reasonable belief that he must resign to avoid termination, not only constitute a violation of the CFRA/FMLA, but also estop Defendants from claiming that Plaintiff resigned voluntarily.

65.    Defendant YMCA coerced Plaintiff to resign and/or constructively terminated Plaintiff in violation of the public policy as expressed in the FMLA and CFRA, which specifically prohibit interference with, and retaliation in response to, an employee's job-protected leave from work to care for a parent with a serious health condition. Plaintiff's resigned under conditions unusually offensive to a reasonable person, and tantamount to Defendant's termination of Plaintiff.

66.    Defendant YMCA committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice, in conscious disregard for Plaintiff's rights. Because the acts taken towards Plaintiff were carried out by Defendant YMCA's managerial employees acting in the despicable, deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

PLAINTIFF'S COMPLAINT

## FOURTH CAUSE OF ACTION

### (Violation of Family Medical Leave Act-Interference)

67. By this reference, Plaintiff hereby incorporates paragraphs 1-66 of this document as though set forth fully herein.

68. The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, or deny the exercise of or the attempt to exercise" any right provided under Title I of the FMLA (29 U.S.C.§2615(a)(1).

69. At all times material, hereto, Plaintiff was an eligible employee covered by the Family Medical Leave Act, 29 U.S.C. § 2601 et seq., entitled to FMLA leave to care for a parent suffering from a serious health condition, having worked over 1,250 hours for Defendant YMCA during the previous 12 months, during which he had taken under 12 weeks of family care or medical leave time off.

70. At all times material hereto, Defendant YMCA was an employer covered under the FMLA, employing more than 50 persons within 75 miles of Plaintiff's place of employment; and, Defendant THOMPSON was a managerial employee of Defendant YMCA, covered under the FMLA.

71. The FMLA required Defendants to provide notice to Plaintiff, of the right to FMLA leave, and grant Plaintiff leave to care for a parent with a serious health condition, with a guarantee of employment in the same or a comparable position upon the termination of the leave.

72. Plaintiff provided reasonable and sufficient notice as soon as practicable under the circumstances to make Defendants aware that he needed to take leave to care for a parent with a serious health condition, and the reasons for said leave, including the unanticipated timing of the leave, as alleged above. In response, Defendants had the obligation to inquire about and confirm that Plaintiff sought FMLA leave and the details of such leave, but failed to do so; Defendants denied Plaintiff's FMLA leave without such inquiry. On February 24, 2014, Plaintiff commenced leave to care for his parent with a serious health condition.

PLAINTIFF'S COMPLAINT

73.     Defendants interfered with Plaintiff's lawful exercise of his statutory FMLA rights by, inter alia, failing to timely notify Plaintiff of his statutory rights, affirmatively misleading Plaintiff about and/or concealing, Plaintiff's FMLA rights, failing to make sufficient inquiry into Plaintiff's intention and entitlement to protected FMLA leave, failing to permit and/or denying Plaintiff's request to exercise his lawful rights, discouraging Plaintiff from taking FMLA leave, engaging in behavior that caused Plaintiff to form a reasonable belief that he would be fired for taking such leave, accepting Plaintiff's resignation in retaliation for taking such leave with knowledge that Plaintiff was both unaware of his FMLA rights and also reasonably believed resignation was required to avoid termination for having improperly taken leave, constructively terminating Plaintiff in retaliation for taking such leave, and, refusing to return Plaintiff to the same or comparable position, all in violation of the FMLA.

74.     Defendants' coercion, misrepresentations and/or concealment in regard to Plaintiff's rights under the FMLA, and in regard to his reasonable belief that he must resign to avoid termination, not only constitutes a violation of the FMLA, but also estops Defendants from claiming that Plaintiff resigned voluntarily.

75.     As a direct, foreseeable, and proximate result of Defendants' acts, Plaintiff has suffered substantial losses and earnings and job benefits, and has suffered humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage, the precise amount to be proven at trial.

76.     Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice, in a conscious disregard for Plaintiff's rights.  Because the acts taken towards Plaintiff were carried out by Defendant YMCA's managerial employees acting in the despicable, deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover liquidated damages from Defendants in an amount according to proof.

**FIFTH CAUSE OF ACTION**

**(Violation of Family Medical Leave Act-Retaliation)**

77.     By this reference, Plaintiff hereby incorporates paragraphs 1-76 of this document as though set forth fully herein.

78.     At all times material, hereto, Plaintiff was an eligible employee covered by the Family Medical Leave Act, 29 U.S.C. § 2601 et seq., and entitled to FMLA leave to care for a parent suffering from a serious health condition, having worked over 1,250 hours for Defendant YMCA during the previous 12 months, during which he took under 12 weeks of family care or medical leave time off.

79.     At all times material hereto, Defendant YMCA was an employer covered under the FMLA, employing more than 50 employees within 75 miles of Plaintiff's place of employment; and, Defendant THOMPSON was a managerial employee covered under the FMLA.

80.     The FMLA required Defendants to provide notice to Plaintiff of the right to FMLA leave, and to grant Plaintiff leave to care for a parent with a serious health condition, with a guarantee of employment in the same or a comparable position upon the termination of the leave.

81.     Plaintiff provided reasonable and sufficient notice as soon as practicable under the circumstances to make Defendants aware that he needed to take leave to care for a parent with a serious health condition, and the reasons for said leave, including the unanticipated timing of the leave, as alleged above. On February 24, 2014, Plaintiff commenced leave to care for his parent with a serious health condition.

82.     Defendants retaliated against Plaintiff's for exercising his statutorily protected FMLA rights by, inter alia, failing to timely notify Plaintiff of his statutory rights, affirmatively misleading Plaintiff about, and/or concealing, Plaintiff's FMLA rights, failing to permit and/or affirmatively denying Plaintiff the exercise of his lawful rights, discouraging Plaintiff from taking FMLA leave, engaging in behavior that caused Plaintiff to form a reasonable belief that he would be fired for taking such leave, accepting Plaintiff's resignation in retaliation for taking such leave

PLAINTIFF'S COMPLAINT

with knowledge that Plaintiff was both unaware of his rights to FMLA leave and also believed resignation was required to avoid termination for having improperly taken leave, constructively terminating Plaintiff in retaliation for taking such leave, and, refusing to return Plaintiff to the same or comparable position, all in violation of the FMLA.

83.    Defendants' coercion, misrepresentations and/or concealment in regard to Plaintiff's rights under the FMLA, and in regard to his reasonable belief that he must resign to avoid termination, not only constitute a violation of the FMLA, but also estops Defendant from claiming that Plaintiff resigned voluntarily.

84.    As a direct, foreseeable, and proximate result of Defendants' acts, Plaintiff has suffered substantial losses and earning and job benefits, and has suffered humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage, the precise amount to be proven at trial.

85.    Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice, in a conscious disregard for Plaintiff's rights.  Because the acts taken towards Plaintiff were carried out by Defendant YMCA's managerial employees acting within the scope of their authority in the despicable, deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover liquidated damages from Defendants in an amount according to proof.

**SIXTH CAUSE OF ACTION**
**(For Intentional Infliction of Emotional Distress)**
**(Against Defendant YMCA)**

86.    By this reference, Plaintiff hereby incorporates paragraph 1-85 inclusive of this document as if set forth fully herein.

87.    Defendants' conduct, as descried above constituted outrageous conduct in that it exceeds all bounds of common decency usually tolerated by a civilized society.

88.    Defendant, acting on its own, and through managerial agents and employees,

PLAINTIFF'S COMPLAINT

engaged in the acts heretofore described deliberately and intentionally in order to cause Plaintiff severe emotional distress. Alternatively, Plaintiff alleges that such conduct was done in reckless disregard of the probability of said conduct, causing severe emotional distress.

89. As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to Plaintiff's damage, the precise amount to be proven at trial.

90. Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Because the acts taken towards Plaintiff were carried out by Defendant YMCA's managerial employees acting in a despicable, deliberate, cold, callous and intentional manner, in order to injure and damage Plaintiff, she is entitled to recover punitive damages from Defendants, in an amount according to proof.

## SEVENTH TH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)
### (Against Defendant YMCA)

91. By this reference, Plaintiff hereby incorporates paragraph 1-90 inclusive of this document as if set forth fully herein.

92. Defendants' conduct, as descried above constituted outrageous conduct in that it exceeded all bounds of common decency usually tolerated by reasonable people in a civilized society.

93. Defendant YMCA and Plaintiff share a special relationship of employer and employee.

94. Defendant YMCA's conduct violated a public policy of the state of California.

95. Defendant, acting on its own, and through agents and employees, engaged in the acts heretofore described, negligently and without due care for whether Plaintiff would suffer severe emotional distress and/or intentionally or with reckless disregard of the probability of such

conduct, in order to cause Plaintiff severe emotional distress.

96.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, anguish, grief and shame, all to Plaintiff's damage, the precise amount to be proven at trial.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a jury trial on all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, granting the following relief:

1.    That Plaintiff have and recover a judgment against Defendants in an amount to be determined at trial as general, special, actual, compensatory, liquated and/or nominal damages for violation of the CFRA (Govt Code §12945.2), and FMLA (29 U.S.C.§2615(a) and (b));

2.    That Plaintiff have and recover judgment against Defendants in an amount to be determined at trial as general, special, actual, compensatory and/or nominal damages for the common law claims;

3.    That Plaintiff have and recover a judgment against Defendants for punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendants;

4.    That Plaintiff have and recover a judgment against Defendants in an amount to be determined at trial for expenses of this litigation, including but not limited to, reasonable attorney's fees as allowed by law, including but not limited to California Govt. Code §12965(b), and 29 U.S.C. §2617;

5.    The Plaintiff have a recover costs of suit in prosecuting this action, including expert witness fees as allowed by law, including but not limited to Cal. Govt. Code §12965(b), and 29 U.S.C. §2617;

PLAINTIFF'S COMPLAINT

6.      That Plaintiff recover pre-judgment and post-judgment interest;

7.      That Plaintiff recover liquidated damages under 29 U.S.C.§2617;

8.      Injunctive relief to prevent Defendant YMCA from engaging in the unlawful practices, policies and customs set forth herein;

9.      A declaration of Plaintiff's fair employment rights and Defendants' anti-discrimination duties and responsibilities, and a declaration of the illegality of Defendants' actions and failures here.

10.     Such other relief as this Court deems just and appropriate.


DATED: NOVEMBER 24, 2015                    LAW OFFICE OF ROBERT V. RICHTER

                                            s/Robert V. Richter_____
                                            ROBERT V. RICTHER
                                            Attorneys for Plaintiff

PLAINTIFF'S COMPLAINT